1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   SANTOS IGNACIO LOPEZ

11              Petitioner,              No. 2:11-CV-2251 GEB DAD

12        vs.

13   TIM VIRGA,

14              Respondent.          FINDINGS & RECOMMENDATIONS

15   _____/

16              Petitioner, a state prisoner, proceeds pro se with a petition for a writ of habeas

17   corpus pursuant to 28 U.S.C. § 2254.  At issue is the sentence imposed with respect to a

18   judgment of conviction entered against petitioner on August 26, 2008 in the Sacramento County

19   Superior Court on charges of bringing heroin into a state prison and possession of heroin in a

20   state prison.  Petitioner seeks federal habeas relief on grounds that, first, the trial court abused its

21   discretion in refusing to dismiss one or both of the prior serious felony conviction enhancement

22   allegations brought against him; and second, the indeterminate life sentence imposed in his case

23   was disproportionate to the offenses of which he was convicted.  After careful consideration of

24   the record and the applicable law, the undersigned will recommend that petitioner's application

25   for habeas corpus relief be denied.

26   /////

1

PROCEDURAL BACKGROUND

On August 26, 2008, a Sacramento County Superior Court jury found petitioner guilty of bringing heroin into California State Prison-Sacramento (CSP-Sacramento) and possession of heroin in CSP-Sacramento.  (1 Clerk's Transcript on Appeal ("CT") at 121.[1])  In a bifurcated bench trial, the trial court also determined petitioner had previously incurred two prior "strike" convictions within the meaning of California Penal Code §§ 667(b)-(I) and 1170.12.  (2CT at 326-27.)  Pursuant to the decision in People v. Superior Court (Romero), 13 Cal.4th 497 (1996), petitioner moved the state trial court to exercise its discretion and strike his prior strike convictions.  (1CT at 147-56.)  The trial court denied that motion and sentenced petitioner to an indeterminate term of twenty-five years to life in state prison in accordance with California's Three Strikes Sentencing Law.  (2CT at 388-89.)

On appeal in state court, petitioner presented the same two issues that he has presented to this court on collateral review.  (Resp't's Lod. Doc. 1)  On August 17, 2010, the California Court of Appeal for the Third Appellate District affirmed the judgment his conviction on appeal.  (Resp't's Lod. Docs. 3)  On October 20, 2010, the California Supreme Court denied a petition for review filed on petitioner's behalf.  (Resp't's Lod. Doc. 5.)  On August 25, 2011, the pending federal habeas petition raising the same two claims was docketed in this court.  Accordingly, the parties agree that petitioner has exhausted the two claims presented in his federal petition by fairly presenting them to the highest state court in California.

FACTUAL BACKGROUND

The California Court of Appeal for the Third Appellate District summarized the facts underlying petitioner's offenses in an unpublished memorandum and opinion on direct appeal as follows:

/////

---

[1]  Notice of Lodging Documents on February 27, 2012 (Doc. No. 18), Resp't's Lod. Doc. 1CT.

In January 2006, defendant, an inmate at the California State Prison in Sacramento, was visited by his father and sister in the prison's visiting area. Correctional Officer Pamela Montez was working in the visiting room control booth that day, surveying the room by video monitor. Montez noticed that defendant was watching the officer's desk and not interacting much with his visitors. Montez saw defendant place something in his mouth and then gulp his drink down without chewing. She also thought she saw him place something into his rectum. Montez relayed the information to Correctional Officer Steven Williamson, who was working the visiting room desk.

Williamson summoned defendant to the search area. However, defendant turned and walked away from Williamson, taking things from his pockets and throwing them on the ground as he walked. When defendant refused to heed Williamson's repeated commands to stop and get down, Williamson took defendant down to the ground and restrained him. Williamson directed another officer, William Brown, to the location of a balloon thrown by defendant. Brown collected the balloon which was later found to contain heroin. Brown also collected all of the items from the table where defendant and his visitors had been sitting and searched each item. Inside a warm ham and cheese sandwich, he found a latex glove containing four small balloons, each of which contained heroin.

Defendant was taken to the "stripout" room and searched, then placed on contraband watch. Officers eventually collected five balloons from defendant's feces, each of which contained heroin. The heroin from all of the balloons recovered had a combined weight of 41.16 grams.

(Resp't's Lod. Doc. 3 (hereinafter Opinion) at 2-3.)

ANALYSIS

I.  Standards of Review Applicable to Habeas Corpus Claims

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 131 S. Ct. 13, 16 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

/////

1    Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal

2 habeas corpus relief:

3    An application for a writ of habeas corpus on behalf of a
     person in custody pursuant to the judgment of a State court shall
4    not be granted with respect to any claim that was adjudicated on
     the merits in State court proceedings unless the adjudication of the
5    claim -

6    (1) resulted in a decision that was contrary to, or involved
     an unreasonable application of, clearly established Federal law, as
7    determined by the Supreme Court of the United States; or

8    (2) resulted in a decision that was based on an unreasonable
     determination of the facts in light of the evidence presented in the
9    State court proceeding.

10    For purposes of applying § 2254(d)(1), "clearly established federal law" consists

11 of holdings of the United States Supreme Court at the time of the state court decision. Stanley v.

12 Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06

13 (2000)). Nonetheless, "circuit court precedent may be persuasive in determining what law is

14 clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at

15 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)).

16    A state court decision is "contrary to" clearly established federal law if it applies a

17 rule contradicting a holding of the Supreme Court or reaches a result different from Supreme

18 Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640

19 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may

20 grant the writ if the state court identifies the correct governing legal principle from the Supreme

21 Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2]

22 Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360

23 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ

24

25    [2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be
    overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
26 presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford,
    384 F.3d 628, 638 (9th Cir. 2004)).

4

1    simply because that court concludes in its independent judgment that the relevant state-court

2    decision applied clearly established federal law erroneously or incorrectly.  Rather, that

3    application must also be unreasonable." Williams, 529 U.S. at 412.  See also Schriro v.

4    Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal

5    habeas court, in its independent review of the legal question, is left with a 'firm conviction' that

6    the state court was 'erroneous.'").  "A state court's determination that a claim lacks merit

7    precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of

8    the state court's decision." Harrington v. Richter,131 S. Ct. 770, 786 (2011) (quoting

9    Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for

10   obtaining habeas corpus from a federal court, a state prisoner must show that the state court's

11   ruling on the claim being presented in federal court was so lacking in justification that there was

12   an error well understood and comprehended in existing law beyond any possibility for fairminded

13   disagreement." Harrington,131 S. Ct. at 786-87.

14           If the state court's decision does not meet the criteria set forth in § 2254(d), a

15   reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v.

16   Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th

17   Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because

18   of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

19   considering de novo the constitutional issues raised.").

20           The court looks to the last reasoned state court decision as the basis for the state

21   court judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir.

22   2004).  If the last reasoned state court decision adopts or substantially incorporates the reasoning

23   from a previous state court decision, this court may consider both decisions to ascertain the

24   reasoning of the last decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en

25   banc).  "When a federal claim has been presented to a state court and the state court has denied

26   relief, it may be presumed that the state court adjudicated the claim on the merits in the absence

1   of any indication or state-law procedural principles to the contrary." Harrington, 131 S. Ct. at

2   784-85.  This presumption may be overcome by a showing "there is reason to think some other

3   explanation for the state court's decision is more likely." Id. at 785 (citing Ylst v. Nunnemaker,

4   501 U.S. 797, 803 (1991)).  Where the state court reaches a decision on the merits but provides

5   no reasoning to support its conclusion, a federal habeas court independently reviews the record to

6   determine whether habeas corpus relief is available under § 2254(d).  Stanley, 633 F.3d at 860;

7   Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).   "Independent review of the record is

8   not de novo review of the constitutional issue, but rather, the only method by which we can

9   determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at

10   853.  Where no reasoned decision is available, the habeas petitioner still has the burden of

11   "showing there was no reasonable basis for the state court to deny relief." Harrington, 131 S. Ct.

12   at 784.

13          When it is clear, however, that a state court has not reached the merits of a

14   petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a

15   federal habeas court must review the claim de novo.  Stanley, 633 F.3d at 860; Reynoso v.

16   Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir.

17   2003).[3]

18   II.  Petitioner's Claims

19          A.      Abuse of Discretion under People v. Superior Court (Romero)

20          Pursuant to the decision of the California Supreme Court in Romero, 13 Cal.4th

21   497, a state trial court in California has statutory discretion to strike prior serious felony

22   convictions that have been alleged for sentence enhancement purposes.  Prior to his sentencing,

23   petitioner moved pursuant to Romero to strike one or both of his prior serious felony convictions.

24

25          [3]  The United States Supreme Court has recently granted certiorari in a case apparently to

26   consider this issue.  See Williams v. Cavazos, 646 F.3d 626, 639-41 (9th Cir. 2011), cert. granted
in part, 132 S. Ct. 1088 (2012).

Petitioner claims the trial court abused its discretion in denying his motion.  (Pet. at 5.)

      The California Court of Appeal rejected this argument, holding:

> The three strikes law "'establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court "conclud[es] that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme."' [Citation.]" (People v. Carmony (2004) 33 Cal.4th 367, 377 (Carmony).)  In making this determination, the court should consider "the nature and circumstances of the defendant's present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects." (People v. Williams (1998) 17 Cal.4th 148, 161.)

> "[A] trial court's refusal or failure to dismiss or strike a prior conviction allegation under section 1385 is subject to review for abuse of discretion." (Carmony, supra, 33 Cal.4th at p. 375.)  In the context of sentencing decisions, "a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (Id. at p. 377.)  Reversal for abuse of discretion is justified where the trial court was unaware of its discretion to strike a prior strike, or refused to do so at least in part for permissible reasons. (Id. at p. 378.)  But where the court, aware of its discretion, "'balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance.' [citation]." (Ibid.)

> The trial court was well aware of its discretion to strike defendant's prior strikes, and did not abuse that discretion in refusing to do so. The court stated that it "spent a fair amount of time" reviewing the documentation regarding defendant's prior strike offenses.  The first strike, a conviction for voluntary manslaughter, arose out of an incident that occurred in June 1997, when defendant was 17 years old.  Defendant, the driver of a car, struck a rival gang member on a bicycle.  Defendant pulled up alongside the individual that he hit. Defendant laughed and his passenger stared at the individual.  The individual then pulled a gun from his pocket and fired several shots into defendant's vehicle, injuring defendant and killing his passenger.

> Defendant's second strike, assault with a deadly weapon, arose out of an incident that occurred in November 1997.  Passengers fired several shots from a vehicle driven by defendant, sending pedestrians running for safety.  Defendant then led police officers on a high-speed chase, striking several vehicles and placing numerous people in danger in the process.

The trial court found both incidents to be "strike conduct," the November 1997 incident being "far more heinous in nature." Taking that into consideration, along with defendant's age, the court noted that it could not "find anything that actually would provide for [defendant] to be outside the spirit of the Three Strikes law."

The court noted that, in addition to the current offense involving conduct while in prison, defendant "has had a new number of write-ups while in prison." Those incidents include participating in a riot in January 1999, possession of a falsified document in February 2000, mutual combat in May 2000, participating in a riot in October 2003, possession of manufactured alcohol in September 2004, refusing to stand for count twice in March 2005, refusing a direct order in January 2006, and possession of escape paraphernalia (i.e., a cell phone) in January 2008.

With respect to the current offense, the court remarked that it involved a substantial amount of contraband, noting that defendant's family assisted him in smuggling the heroin into the prison. While not eager to sentence defendant to 25 years to life in prison, the court explained that it could not find anything to persuade it that defendant was outside the spirit of the three strikes law.

Defendant argues that his current offense is a "non-violent narcotics offense not involving any weapon and apparently was at the behest of others in prison." However, even his trial counsel conceded that the amount of heroin was "substantial," making this more than a minor felony.

Defendant also argues, as he did in the trial court, that his prior strike convictions did not involve the use of a gun by defendant, and that the bulk of his disciplinary actions in prison were "minor in nature" and did not involve conduct initiated by him. The fact that defendant may not have fired the gun in either of the prior strike offenses does not aid him. He initiate the June 1997 incident by using his vehicle to strike another individual on a bicycle and then drove alongside the individual, which led to the victim shooting in response and ultimately injuring defendant and killing his passenger. Some five months later, in the second incident in November 1997, after shots rang out from defendant's car, he led police on a dangerous car chase ramming other vehicles and placing police and innocent bystanders in great peril.

As for defendant's prison conduct, his record demonstrates that he was consistently involved in misconduct over a period of seven years prior to the current offense, and once again two years thereafter.

/////

8

1
2
3
4

> Finally, defendant argues that the particulars of his background, character, and prospects compel the conclusion that he falls outside the spirit of the three strikes law because not only is his criminal record "limited and remote in comparison to his age," but he has "support on the outside and offers of employment upon his release," and he is "ready to take steps toward becoming a productive member of society."

5
6
7
8
9

> Defendant fails to note, however, that his prior criminal history is limited due to the fact that his 1997 crimes were serious enough to result in an 11-year prison sentence, thus accounting for the fact that defendant committed no other crimes in the interim. Moreover, defendant committed a steady stream of violations during his period of incarceration culminating in the current crime. All of this behavior belies defendant's claim that he has been or is now ready to take steps to become a productive member of society. He does not fall outside the spirit of the three strikes law.

10
11

> The trial court properly exercised its discretion in denying defendant's <u>Romero</u> motion.

12 (Opinion at 4-8.)

13        Petitioner does not allege that the sentence he challenges was imposed under an

14 invalid statute or that it was in excess of that actually permitted under state law.  <u>Cf.</u> <u>Marzano v.</u>

15 <u>Kincheloe</u>, 915 F.2d 549, 552 (9th Cir. 1990) (due process violation found where the petitioner's

16 sentence of life imprisonment without the possibility of parole could not be constitutionally

17 imposed under the state statute upon which the conviction was based); <u>see</u> <u>also</u> <u>Makal v. State of</u>

18 <u>Arizona</u>, 544 F.2d 1030, 1035 (9th Cir. 1976) (So long as a sentence imposed by a state court "is

19 not based on any proscribed federal grounds such as being cruel and unusual, racially or

20 ethnically motivated, or enhanced by indigency, the penalties for violation of state statutes are

21 matters of state concern.")  Rather, petitioner merely claims that the trial court abused its

22 discretion under state law in denying his <u>Romero</u> motion and erred in its application of state

23 sentencing law.  Absent fundamental unfairness, federal habeas corpus relief is not available for a

24 state court's misapplication of its own sentencing laws.  <u>Estelle</u>, 502 U.S. at 67; <u>Middleton v.</u>

25 <u>Cupp</u>, 768 F.2d 1080, 1085 (1986); <u>Christian v. Rhode</u>, 41 F.3d 461, 469 (9th Cir. 1994) (federal

26 habeas relief unavailable for claim that state court improperly relied upon a prior federal offense

1  to enhance punishment); <u>Miller v. Vasquez</u>, 868 F.2d 1116, 1118-19 (9th Cir. 1989) (claim that a

2  prior conviction was not a "serious felony" under California sentencing law not cognizable in

3  federal habeas proceeding).  To state a cognizable claim for federal habeas corpus relief based on

4  an alleged state sentencing error, a petitioner must show that the alleged sentencing error was "so

5  arbitrary or capricious as to constitute an independent due process" violation.  <u>Richmond v.</u>

6  <u>Lewis</u>, 506 U.S. 40, 50 (1992).

7       Here, petitioner cannot show that the state sentencing court's decision was

8  arbitrary or capricious.  The sentencing judge declined to strike petitioner's prior convictions for

9  purposes of sentencing after thoroughly considering the relevant circumstances and applicable

10  state sentencing law.  The state appellate court, in turn, also carefully considered those factors in

11  rejecting petitioner's contention on appeal that the sentencing court abused its discretion under

12  state law.  Under these circumstances, petitioner fails to demonstrate an independent due process

13  violation and the state courts' rejection of petitioner's <u>Romero</u> claim is not contrary to, or an

14  unreasonable application of federal law.  <u>See</u> <u>Haller v. Biter</u>, No. 2:10-cv-3446 WBS DAD P,

15  2012 WL 3764045, at * 19 (E.D. Cal. Aug. 29, 2012) (the decision of state courts with respect to

16  petitioner's <u>Romero</u> claim under state law was not contrary to or an unreasonable application of

17  federal law); <u>Mercadel v. Trimble</u>, No. CV 12-0234-ODW (VBK), 2012 WL 4349313, at *8

18  (C.D. Cal. Aug. 29, 2012) ("[A] claim that the state court erred by refusing to grant Petitioner's

19  <u>Romero</u> motion and striking one of Petitioner's prior strikes only concerns state sentencing law

20  and does not implicate a federal constitutional right. [citations omitted].")  Accordingly,

21  petitioner is not entitled to federal habeas relief with respect to his first claim.

22       B.     Cruel and Unusual Punishment

23       In his second ground for habeas relief, petitioner asserts that his sentence of 25

24  years to life in state prison is disproportionate to the non-violent nature of the crimes for which

25  he was convicted.  (Pet. at 5.)  Presented with this argument on direct appeal, the California

26  Court of Appeal rejected petitioner's contention:

Conceding that the United States Supreme Court "has concluded the mandatory indeterminate sentences of the Three Strikes law do not constitute cruel and unusual punishment in the abstract," defendant urges that the particular facts of his case require a different result.  We are not persuaded.

Under the proscription of "cruel and unusual punishment" in the Eighth Amendment to the United States Constitution (applicable to the states via the Fourteenth Amendment), a "'narrow proportionality principle' . . . 'applies to noncapital sentences.'" (Ewing v. California (2003) 538 U.S. 11, 20 (Ewing), quoting Harmelin v. Michigan (1991) 501 U.S. 957, 996-997 (Harmelin).) This constitutional principle "'forbids only extreme sentences that are "grossly disproportionate" to the crime.'"  (Ewing, supra, at p. 23, quoting Harmelin, supra, at p. 1001.)

Objective factors guiding the proportionality analysis include "(I) the gravity of the offense and the harshness of the penalty; (ii) the sentence imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions."  (Solem v. Helm (1983) 463 U.S. 277, 292.) But only in the rare case where the first factor is satisfied does a reviewing court consider the other two factors.  (Harmelin, supra, 501 U.S. at p. 1005 (conc. opn. of Kennedy, J.).)

The United States Supreme Court rejected an Eighth Amendment challenge to a 25-years-to-life three strikes sentence in Ewing, supra, 538 U.S. 11, noting that recidivism has traditionally been recognized as a proper ground for increased punishment.  (Id. at p. 25.)  Given the defendant's long criminal history, the court held that the defendant's punishment was not disproportionate despite the relatively minor character of his current felony.  (Id. at p. 29.)

Here, defendant's criminality began in 1997 when he was 17 years old.  Within a brief six-month period, defendant was twice involved in gang-related conduct resulting first in a voluntary manslaughter conviction and next in an assault with a deadly weapon conviction.  For those crimes, he was sentenced to 11 years in state prison.  While in prison, defendant committed a steady stream of violations, some minor and others more serious.  That misconduct in prison culminated in the current offense which, although nonviolent, involved a substantial amount of heroin smuggled into the institution.  Defendant's punishment under the three strikes sentencing scheme was not grossly disproportionate in light of his criminal record.  (See People v. Poslof (2005) 126 Cal. App.4th 92, 109; People v. Meeks (2004) 123 Cal. App.4th 695, 706-710.)

Similarly, article I, section 17 of the California Constitution proscribes "cruel or unusual punishment."  Although this language is construed separately from the federal constitutional ban on

"cruel and unusual punishment" (People v. Carmony (2005) 127 Cal. App.4th 1066, 1085), the method of analysis is similar: the reviewing court considers "the nature of the offense and/or the offender, with particular regard to the degree of danger both present to society"; the comparison of "the challenged penalty with the punishments prescribed for the *same jurisdiction for different offenses*"; and the comparison of "the challenged penalty with the punishments prescribed in the *same offense in other jurisdictions* . . . ." (In re Lynch (1972) 8 Cal.3d 410, 425-427.)  The purpose of this analysis is to determine whether the punishment is "so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (Id. at p.424, fn. omitted.)

This is not one of those rare cases where the sentence is so disproportionately harsh as to shock the conscience or to offend fundamental notions of human dignity.  (See People v. Kinsey (1995) 40 Cal. App.4th 1621, 1631.)  We have previously discussed in this opinion defendant's record reflecting a general lack of concern for the safety of others and willingness to abide by the law.  His violations in prison, consistent with his behavior in society, continue to demonstrate his disregard for rules – prison rules.  Smuggling heroin into the prison reflects his continuing disregard for the law and, assuming the significant amount of smuggled heroin had made its way into the prison, a potential for more lawless behavior by defendant and other inmates. Defendant's punishment is not disproportionate to that imposed on other recidivists under the three strikes law, including those whose present offense, like defendant's, is not a "serious" or "violent" felony under that law.  (See e.g., People v. Poslof, supra, 126 Cal. App.4th at pp. 706-710.)

Defendant places great significance on the fact that he was not the "actual shooter" and "did not use any weapon" in either of his two prior strike incidents.  His arguments are meritless given the circumstances of his two prior strike incidents.  The fact that defendant's priors may be "old relative to his age" is of little consequence considering that he has been in prison since committing those crimes and has demonstrated a consistent pattern of misconduct while incarcerated.

In support of his argument that the penalty in this case is disproportionate when compared to the penalty prescribed in other California cases where the offense was more serious, defendant cites In re Oluwa (1989) 207 Cal. App.3d 439, 444-447 (Oluwa)), a case in which the defendant, a nonrecidivist, was convicted of second degree murder, child endangering and cruel or inhuman corporal punishment of a child and sentenced to 15 years to life in state prison.  (Id. at p. 442.)  However, as defendant properly concedes, California appellate courts have held that cases such as Oluwa cannot be compared to cases in which the defendant is a

1          recidivist.  (See People v. Martinez, supra, 71 Cal. App.4th at p.
      1516.)

2

3          Defendant has not shown that his punishment was "cruel and
      unusual" under the federal Constitution, or "cruel or unusual"
      under the California Constitution.

4

5    (Opinion at 9-13.)

6          Petitioner's claim that his sentence was disproportionate to his crimes presents a

7    challenge under the Eighth Amendment's "narrow proportionality principle," which applies to

8    terms of imprisonment.  See Harmelin v. Michigan, 501 U.S. 957, 996 (1991) (Kennedy, J.,

9    concurring); see also Taylor v. Lewis, 460 F.3d 1093, 1097 (9th Cir. 2006).  Successful

10   challenges in federal court to the proportionality of particular sentences are "exceedingly rare."

11   Solem v. Helm, 463 U.S. 277, 289-90 (1983).  See also Ramirez v. Castro, 365 F.3d 755, 775

12   (9th Cir. 2004).  "The Eighth Amendment does not require strict proportionality between crime

13   and sentence.  Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the

14   crime."  Harmelin, 501 U.S. at 1001 (Kennedy, J., concurring) (citing Solem, 463 U.S. at 288,

15   303).

16         In Lockyer v. Andrade, the United States Supreme Court held that it was not an

17   unreasonable application of clearly established federal law for the California Court of Appeal to

18   affirm a three strikes sentence of two consecutive 25 year-to-life imprisonment terms for a petty

19   theft with a prior conviction involving theft of $150.00 worth of videotapes.  Andrade, 538 U.S.

20   at 75.  And, as noted by the state appellate court in this case, in Ewing v. California, 538 U.S. 11,

21   29 (2003), the Supreme Court held that a three strikes sentence of 25 years-to-life in prison was

22   not grossly disproportionate and did not violate the Eighth Amendment.  In Ewing, the

23   defendant's crime upon which he was sentenced to the challenged term was grand theft involving

24   the theft of three golf clubs from a pro shop.  Id. at 29.  See also Crosby v. Schwartz, 678 F.3d

25   784, 791-92 (9th Cir. 2012) (finding that the state court's determination, that a sentence of 26

26   years to life in prison under California's Three Strikes Law for failure to annually update one's

1 registration as a sex offender and failure to register within five days of a change of address did

2 not constitute cruel and unusual punishment, was not an unreasonable application of clearly

3 established federal law).

4          In assessing the compliance of a non-capital sentence with the proportionality

5 principle, a reviewing court must consider certain objective factors to the extent possible. Solem,

6 463 U.S. at 290. As the state court recognized in this case, foremost among these factors are the

7 severity of the penalty imposed and the gravity of the offense. "Comparisons among offenses

8 can be made in light of, among other things, the harm caused or threatened to the victim or

9 society, the culpability of the offender, and the absolute magnitude of the crime." Taylor, 460

10 F.3d at 1098.[4]

11          Considering these factors, petitioner's sentence does not fall within the type of

12 "exceedingly rare" circumstance that would support a finding that his sentence violates the

13 Eighth Amendment. The sentence imposed in his case is substantial and arguably harsh for a

14 non-violent offense. However, as noted by the state court of appeal, petitioner has a criminal

15 history involving violence, has demonstrated a consistent pattern of misconduct during his

16 incarceration, and the amount of heroin he attempted to smuggle into prison was substantial. In

17 light of the sentences upheld by the Supreme Court in Harmelin, Andrade, and Ewing as

18 discussed herein, the sentence imposed in petitioner's case cannot be said to be grossly

19 _____

20          [4] The United States Supreme Court has also suggested that reviewing courts compare the
sentences imposed upon other defendants in the same jurisdiction, and also compare the

21 sentences imposed for commission of the same crime in other jurisdictions. Taylor v. Lewis, 460
F.3d 1093, 1098 n.7 (9th Cir. 2006). However,

22
          consideration of comparative factors may be unnecessary; the

23          Solem court "did not announce a rigid three-part test." See
          Harmelin, 501 U.S. 957; see also Rummel v. Estelle, 445 U.S. 263,

24          282 (1980) ("Absent a constitutionally imposed uniformity
          inimical to traditional notions of federalism, some State will

25          always bear the distinction of treating particular offenders more
          severely than any other State.").

26 460 F.3d at 1098 n.7.

14

1  disproportionate to the severity of the offenses of conviction.  See Solem, 463 U.S. at 1004-05.

2  Given this finding, it is not necessary to compare the sentence imposed in petitioner's case to the

3  sentences received by other defendants in other jurisdictions.  See Taylor, 460 F.3d at 1098 n.7.

4  The state appellate court cited and applied the correct proportionality standard and its rejection of

5  petitioner's Eighth Amendment claim was based on a reasonable application of that standard.

6  Accordingly, no petitioner is not entitled to federal habeas relief with respect to the claim that his

7  sentence was disproportionate to his crimes.

8                                              CONCLUSION

9               For the reasons set forth above, IT IS HEREBY RECOMMENDED that

10  petitioner's application for a writ of habeas corpus be denied.

11               These findings and recommendations are submitted to the United States District

12  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

13  one days after being served with these findings and recommendations, any party may file written

14  objections with the court and serve a copy on all parties.  Such a document should be captioned

15  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

16  shall be served and filed within fourteen days after service of the objections.  Failure to file

17  objections within the specified time may waive the right to appeal the District Court's order.

18  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

19  1991).  In his objections petitioner may address whether a certificate of appealability should issue

20  in the event he files an appeal of the judgment in this case.  See Rule 11, Federal Rules

21  Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability

22  when it enters a final order adverse to the applicant).

23  DATED: October 29, 2012.

24

25  DAD:11
    lope2251.157.F&R                           _____
26                                             DALE A. DROZD
                                               UNITED STATES MAGISTRATE JUDGE